## FREEDLEY v. WILSON.

(Circuit Court of Appeals, Second Circuit. February 27, 1905.)

No. 137.

CONTRACTS—CONSTRUCTION—BREACH—OPTION TO RENEW.

Plaintiff contracted with defendant to quarry, between January 1, 1901, and January 1, 1902, 50,000 cubic feet of marble from defendant's quarry, at not less than 2,000 cubic feet in the month of April and 6,000 in each of the succeeding months. The contract also provided that, if plaintiff stripped more than 50,000 cubic feet, he should have the option of quarrying all the marble so stripped at the same price, and, if defendant operated the quarry during the succeeding year, plaintiff should have the option of a contract for quarrying all marble taken out at the price provided for. At the close of the season plaintiff had only quarried 43,707 feet, but there was at that time 26,640 cubic feet which plaintiff had stripped, but not quarried. *Held* that, plaintiff having failed to quarry the amount required by the contract through no fault of defendant, he could not recover damages for defendant's refusal to permit him to quarry the marble so stripped.

In Error to the Circuit Court of the United States for the District of Vermont.

This cause comes here on writ of error by defendant from a judgment (125 Fed. 962, 129 Fed. 835) in favor of plaintiff for $4,472.83, for damages for breach of contract.

F. M. Butler, for plaintiff in error.

O. M. Barber, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The plaintiff was an experienced quarryman; the defendant, the owner of a marble quarry at East Dorset, Vt. In December, 1900, they entered into a contract, by which defendant, "party of the first part," agreed to employ plaintiff, "party of the second part," to quarry marble, under certain conditions, from defendant's quarry, and to pay plaintiff "forty-five cents per cubic foot for all marble so quarried and delivered." The portions of said contract material to the questions herein are as follows:

"Second. The party of the second part agrees to quarry from the tunnel of said quarry, between the 1st day of January, 1901, and the 1st day of January, 1902, an amount of marble not less than fifty thousand (50,000) cubic feet and to deliver the same at the wheelhouse derrick of said quarry.

"Third. The party of the second part agrees to deliver the aforesaid marble as follows: Not less than two thousand (2,000) cubic feet in the month of April, and not less than six thousand (6,000) cubic feet per month in each of the succeeding eight months. * * *

"Seventh. The party of the second part agrees that, if at the end of each month he has not delivered the amount of stone stipulated in this contract,.

he will pay to the party of the first part, in satisfaction of all damages, ten cents per cubic foot for any deficiency; and it is further agreed that any stone which may be delivered by the party of the second part in excess of the amount stipulated in this contract shall apply on the following month or months during the term of this contract. * * *

"Eleventh. The party of the first part agrees to transport free of charge and promptly upon the railroad from the mill to the quarry any supplies or machinery required by the party of the second part; it being understood that the party of the second part assumes all responsibility for damage during said transportation, except when caused by gross negligence. It is further understood that not more than three tons shall be taken in one load. * * *

"Seventeenth. It is understood that, in case the party of the second part strips more than the fifty thousand feet required in this contract, he will have the option of quarrying all the marble so stripped at the same price as is provided in this agreement; and it is further understood that, if the party of the first part operates the tunnel during the year succeeding the termination of this contract, the party of the second part will have the option of a contract for quarrying all marble to be taken out at the same price provided in this agreement."

Other portions of said contract provided that defendant should furnish a certain water supply and a derrick. The jury having rendered a verdict for plaintiff for damages for defendant's failure to furnish the water and derrick, the court, on motion to set aside the verdict, found that these items of damage were not sufficiently supported by the evidence, and the claims therefor were remitted and are not involved herein. The jury rendered a special verdict in favor of plaintiff for damages, as follows:

| | |
|---|---:|
| For not supplying water | $ 885 00 |
| For not furnishing derrick | 600 00 |
| For not transporting coal | 301 00 |
| For refusing option on stripped block | 8,351 66 |
| | $10,137 66 |

The verdict for damages for defendant's failure to transport coal was justified by the evidence, and is not involved in the issues raised herein. The exceptions raise the question of the propriety of the action of the trial judge in awarding to plaintiff one-half of his damages by reason of defendant's denial of the option provided for in the seventeenth section of the contract.

It appeared on the trial that plaintiff failed to deliver the stipulated quantity at the end of each month, and that defendant had made deductions for such failure in accordance with the provisions of the seventh section. At the close of the season plaintiff had only furnished 43,707 feet of the 50,000 which he had agreed to deliver. There was on hand in the quarry at the close of the season some 26,640 feet of marble, which plaintiff had stripped or uncovered, under section 17 of the contract, in excess of the amount agreed to be delivered, and defendant claimed that he had the option of quarrying this marble at any time after the close of the season. Counsel for defendant requested the court to charge the jury that the contract gave plaintiff no option to quarry marble stripped under it after the expiration of the year. The court did not so charge, and the defendant duly excepted. The jury returned a verdict for plaintiff for $8,351.66 damages for defendant's refusal to allow plaintiff to exercise his option on said stripped blocks.

On motion to set aside said verdict, the court found that part of plaintiff's failure was due to defendant's breach of contract to supply coal. But the court found, and it is not disputed, that only 1,000 feet of the deficiency of 6,293 feet was due to said breach, and that in no event could the plaintiff have supplied the remaining deficiency within the season limit, which, it was agreed, so far as concerned the contract for the delivery of the 50,000 feet, terminated on December 31, 1901. The court, therefore, found that plaintiff made a substantial default in the fulfillment of the contract, and, therefore, was not entitled to the option provided for in section 17. The court held as follows:

"The uncovering was done with the concurrence of the defendant, and as it is necessary to the beneficial use of the quarry by the defendant in taking out the good marble, and the plaintiff cannot get any benefit from it otherwise, he seems to be entitled to recover that he has in that way benefited the plaintiff by increasing the value of the quarry. This, without question, upon the evidence, is about one-half of the damages found for denying the option. The other one-half, and the damages for not transporting the coal, seem well enough founded to stand. If the plaintiff remits the rest, the motion should accordingly be overruled; if not, the verdict should be set aside."

The plaintiff remitted as provided by the court, and judgment was entered for the damages for not transporting coal and for one-half of the damages found by the jury for denial of option.

This allowance of one-half damages depends, necessarily, upon the conclusion that plaintiff was entitled to exercise his option after December 31, 1901, although without the fault of the defendant he had substantially failed to the extent of 5,293 feet to fulfill his contract to quarry and deliver not less than 50,000 feet of marble between January 1, 1901, and January 1, 1902. In this conclusion we think the learned judge was in error. The true construction of the contract seems to be that the plaintiff had the right to demand pay for all marble stripped by him, which he should quarry before January 1, 1902, provided he fulfilled in all respects the provisions of the contract binding upon him. That it was the understanding and agreement of the parties that this option did not extend beyond January 1, 1902, appears from the provision limiting plaintiff's right to quarry to said date, by the admitted custom and usages as to seasons in said quarries, by the manifest inconvenience to defendant of having plaintiff engaged in quarrying and removing such marble at plaintiff's pleasure during some other season, and by the provision in section 17 leaving the option of the disposition of the quarry to the defendant for the following year, which is as follows:

"That, if the party of the first part operates the tunnel during the year succeeding the termination of this contract, the party of the second part will have the option of a contract for quarrying all marble to be taken out at the same price provided in this agreement."

It follows that, as the court has rightly found that the failure to quarry the 50,000 feet was not through the fault of defendant, and as fulfillment of this agreement was a condition precedent to the right to exercise said option, and as said option, if exercised, must

be exercised within the year fixed by the contract, no damages should have been allowed for the refusal of the option after the expiration of the season.

The judgment is reversed.